DUNCAN McGREGOR, Respondent, v. JAMES BUELL and JAMES McGREGOR, Jr., Appellants.

It is not proper for the Supreme Court, on the return of a remittitur, to add any new and independent direction to the judgment of this court beyond what may be required to carry that judgment into effect.

The Supreme Court cannot add to the judgment contained in the remittitur a new or further judgment, even for costs of the appeal of that court.

Costs of the appeal to the Supreme Court are given by the statute to the prevailing party only in appeals involving the validity or proof of wills; and not to cases which relate only to the granting or withholding of letters testamentary upon a will, the validity or execution of which were not involved.

THE facts in this case, as shown by the return, are, that at the October Term of this court, in 1861, in a case in which the present appellants were respondents, and the present respondent was appellant, after hearing counsel for both parties, a judgment was pronounced, reversing the judgment of the Supreme Court appealed from, "without costs and without prejudice to any future application for letters testamentary," and that the notice of appeal and return thereto and the judgment of this court should be remitted to the Supreme Court to be enforced according to law. The remittitur of this judgment, as set forth in the present return, does not contain the record upon which that judgment was pronounced, and consequently shows nothing beyond what is above stated in reference to the nature of the judgment appealed from, or of the questions involved in the appeal.

The return then sets out a judgment or order for judgment, rendered or made, at a General Term of the Supreme Court at Plattsburgh, in Clinton county, in May, 1863 (under the same title as to parties, appellant and respondents, as that of the former judgment of the court), declaring as follows, viz.: " So much of the surrogate's decision as is appealed from in this case is reversed, with costs of the appeal to de paid personally by the respondents; that the record and proceedings in the action be certified to the surrogate of Saratoga county, together with the order of reversal and award of costs, to be enforced, and that said surrogate pro-

ceed in the matter of granting letters and the disposition of the costs which have accrued in contesting the will according to law." There is nothing in the judgment or order (unless it be by an inference from the similarity of title) to indicate that it had any relation to the case decided in this court.

Next follows a judgment, in what court or where rendered does not appear, but bearing date June 16, 1863, and under the same title as that before mentioned, reciting that the former judgment in that case having been reversed by the judgment of the Court of Appeals, and the record and proceedings of the Court of Appeals having been remitted to that court, to be proceeded upon according to law, and the same having been duly entered in the proceedings of that court, after hearing counsel for both parties, it was ordered adjudged and decreed, that all that part of the decision of the surrogate of Saratoga county entered on the 31st day of December, 1855, which is in these words, "It is also ordered on reading and filing the oath of James McGregor, Jr., and of the executors named in the instrument admitted to probate as the last will and testament of said deceased, that letters testamentary issue unto the said James in the said will; no affidavit having been filed by any person setting forth that he intended to file objections against the granting of such letters. And thereupon James Buell, a legatee named in the aforesaid last will and testament, having made and filed an affidavit setting forth that he intended to file objections against granting letters testamentary unto Duncan McGregor, one of the executors named in the said last will and testament. And thereupon the said surrogate ordered that the granting of letters testamentary unto the said Duncan be stayed for thirty days. It is further ordered, adjudged and decreed by the said surrogate, that there be allowed and paid to Duncan McGregor, from the estate of the said James McGregor, deceased, his taxable costs for witnesses' fees in the matter of the proceedings to prove said will, such fees to be taxed by the surrogate on ten days' notice to James McGregor, the said executor, and to James Buell. It is further ordered and

decreed that there be allowed and paid to Duncan McGregor and James Buell, from the estate of the said deceased, the amount of money which they have respectively paid, and became liable to pay to the surrogate for his fees in the matter of the proceedings to prove said will. It is ordered that the said sum be paid by the above named executor, James McGregor, to the said Duncan McGregor and James Buell respectively, on producing to the executor the receipt of the said surrogate. On motion of the said James McGregor, said executor, Seth Hawley and John H. Thompson are appointed appraisers of the goods, etc., of said deceased;" be reversed, annulled, and altogether held for nothing. It was, also, further ordered, " that the respondents pay to Duncan McGregor, his costs *of this appeal* in this case adjudged at $381.10 ;" and that, " the surrogate of Saratoga county proceed to enforce payment of the costs awarded to Duncan McGregor, against the said James Buell and James McGregor, Jr., according to the course and practice of the surrogate's court." It was also ordered that said surrogate proceed in the matter of granting letters testamentary, and the disposition of the costs which had accrued in contesting the said will, according to law. Whereupon the proceedings were ordered to be certified by the clerk, and remitted to said surrogate to be proceeded upon according to law.

From so much of said judgment as awarded $381.10 costs to Duncan McGregor, the present appeal was taken by James McGregor, Jr., and James Buell, to this court. The return contains nothing beyond what is above stated, together with the notice of appeal.

The cause was submitted here upon the brief of counsel.

*W. A. Beach*, for the appellants.

*J. Ellsworth*, for the respondent.

SELDEN, J. The record in this case appears to be very defective. This court can look only at the return of the court below, for the facts upon which its judgment is to be given. Facts stated in the opinion of the court below, or

elsewhere, not found in the return cannot be regarded. From the return alone, it is not easy to ascertain what has been decided by the Supreme Court, and still less so, to ascertain the grounds upon which such decision was based. It must doubtless be assumed from the uniformity of the names of the parties (although the fact is not otherwise shown), that the judgment of this court of October, 1861, and the order or judgment of the Supreme Court of May 5, 1863, and that of June 16, 1863, were all parts of the proceedings in one cause; and we may therefore resort to the recitals in the last mentioned judgment, by the aid of which alone we are enabled to ascertain the subject matter, either of the judgment now complained of, or, of the former judgment of this court. From those recitals it appears that the judgment which was reversed by this court, " without costs and without prejudice to any future application for letters testamentary," was a judgment of the Supreme Court affirming a decree of the surrogate of Saratoga county, granting to James McGregor, Jr., letters testamentary upon the will of James McGregor deceased, staying for thirty days, the granting of like letters testamentary to Duncan McGregor, on account of objections filed, against granting such letters giving costs to Duncan McGregor and James Buell, for witnesses fees and expenses in the proceedings to prove said will, and appointing appraisers of the goods of the deceased. Upon filing the remittitur from this court containing such reversal, it appears that the Supreme Court proceeded in accordance with the judgment of this court, to reverse their former judgment, and added a further judgment in these words, viz.: " It is *further* ordered that the respondents pay to Duncan McGregor his costs of *this appeal* in this case, adjudged at $381.10 ;" and they also ordered the proceedings to be remitted to the surrogate of Saratoga county, with directions to enforce the payment of the costs awarded to Duncan McGregor, against James Buell and James McGregor, Jr., and to proceed in the matter of granting letters testamentary, and the disposition of the costs which had accrued in contesting the will according to law.

The sole question now presented is, whether this further order, awarding costs against James Buell and James Mc-Gregor, Jr., can be sustained, that being the subject of the present appeal. It does not distinctly appear from the judgment how these costs accrued. I assume, however, that they were the costs of the appeal, taken by Duncan McGregor to the Supreme Court, from the decree of the surrogate, granting letters testamentary to James McGregor, Jr., and denying them to him. If those costs were allowed to Duncan McGregor by the original judgment of the Supreme Court, no appeal appearing by the record to have been taken against him, from such former judgment, the repetition of the allowance in the present judgment would be unobjectionable. Such, however, does not appear to have been the case, and I understand the respondent's counsel to claim that the allowance was a new or further provision, added by the Supreme Court, to the judgment of this court. If this be the true character of the judgment appealed from, it cannot be sustained. It was not proper for the Supreme Court, on the return of the remittitur, to add any new and independent direction to the judgment of this court, beyond what was required to carry that judgment into effect.

I place no particular reliance upon the words "without costs," because those words would naturally apply only to the costs of the appeal to this court. My judgment would have been the same if these words had been omitted, for the reason that the Supreme Court could not add to the judgment contained in the remittitur from this court, a new or further judgment, even for costs of the appeal of that court. If that course were allowed, it would either deprive the party affected by such *new judgment* of the right of appeal, in regard to it, or would authorize several successive appeals from the Supreme Court to this court, before the case could be remitted to the court of original jurisdiction. It has been often held that no appeal from the Supreme Court to this court can properly be brought until that court, by its judgment, has finally disposed of the whole matter before it, including the right to costs as well as other rights of the

parties. Upon appeal from such judgment, or any part of it, it undoubtedly becomes the duty of this court, to affirm, reverse or modify, the whole judgment, or such part of it as may be appealed from, where the appeal is only from a part. If the judgment of this court fails to determine any part of the subject of the appeal, the defect cannot be supplied in the court below.

It is insisted, by the respondent's counsel, that the costs of the appeal to the Supreme Court are given, by statute, to the prevailing party, and that, consequently, that court was bound to include them in its judgment. (3 R. S. 5th ed., 905, §§ 19, 20). If the case were within this statute, the position of the respondent's counsel might, perhaps, be correct; but the statute applies only to appeals involving the validity or proof of wills, and not to cases, like the present, which relates only to the granting or withholding of letters testamentary upon a will, the validity, or execution of which does not appear by the present record to have been involved in the appeal. In such cases, costs are granted or refused, in the discretion of the court. (3 R. S., 909, § 6; Code, § 471; 22 N. Y., 422.)

To prevent a possible inference of an intention to impute to the Supreme Court, a disposition to overstep its authority, or to disregard in any respect the judgment of this court, it is proper to say that no such opinion is entertained, or intended to be expressed. On looking at the opinion delivered in the Supreme Court, and at the report of the decision of this court on the former appeal (24 N. Y., 166), it appears very probable that other facts exist, not shown by the present record, which might have justified the judgment of the Supreme Court. The transcript from the court below is obviously very defective, as it does not conform to the rules of this court, or to those of the Supreme Court, touching such appeals (Rule 2, Court of Appeals; Rule 44, Supreme Court); but as neither party has asked for any amendment of it, or any further return (Rule 3, Court of Appeals), we can only pronounce judgment upon the record

as it appears before us. . The judgment of the Supreme Court, so far as it is appealed from, should be reversed, but without costs of this appeal to either party.

DENIO, Ch. J., WRIGHT, DAVIES and EMOTT, JJ., concurred.

---

CASHTON R. GILBERT, *et al.*, *v.* WILLIAM GILBERT.    S **r** s. c. 2 A **b** Mp. 25c
c **n** t **r**

The provision of the Revised Statutes (3 R. S., 15, § 51) must be construed as abolishing all trusts in land paid for by one person where the conveyance is given to another, whether for the benefit of the party paying the money, or for another, except where the conveyance is so taken without the knowledge or assent of the party whose money is so used — and excepting also in favor of creditors.

INGRAHAM, J. Whether or not the money was paid by the father, upon the condition that the title to the property was to be taken by the defendant in trust, to be conveyed to the plaintiffs after the death of the father, is by no means clear from the evidence. The defendant denies the agreement as positively as the witness Matthews affirms it. The referee has found that such agreement was made, and the only question for us to decide is whether such a trust by parol can be enforced. I understand the statute as applying to all trusts of that character, viz.: Where the title is taken by one person and the consideration is paid by another, whether the trust is intended to be for the benefit of the person paying the money or of a third person. The 51st section (3 R. S., 15) provides where a grant shall be made to one person and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance, and the 52d section provides for the protection of creditors, where the fraudulent intent in taking such conveyance is not disproved.

The effect of this statute, so far as it relates to any interest in the person paying the money, was fully examined in this court by COMSTOCK, J., in *Garfield* v. *Hatmaker* (15 N. Y., 475), in which it was distinctly held that no estate, either

legal or equitable, remained in the person paying the money, and that the creditor of such person could not by a sale under a judgment and execution, obtain any interest or estate in the property so conveyed, but that there was only a pure trust in favor of a creditor to be enforced only in equity.

In *Sieman* v. *Austin* (33 Barb.; 9) a different construction was put upon the 51st section, EMOTT, J., holding that it did not apply to cases where the trust was not for the benefit of the person paying the money. · That case is now before this court for review, and it appears that the grantee voluntarily carried out the agreement by conveying the property to the person for whom it was intended. It was not necessary, to the decision of that case, to inquire whether there was any trust that could be enforced.

It is urged that this section does not apply to a case where the estate is taken for the benefit of a third person other than the person paying the consideration money. There might be force in the suggestion if the section only declared there should be no trust in favor of such person, but it goes farther, and declares also that in such cases the title shall vest in the person named as the alienee in the conveyance.

Had it been intended to exclude from the operation of this section cases of trusts for the benefit of third persons, there would have been no necessity for the 53d section, to protect the case of persons, where the alienee, in violation of some trust, shall have purchased lands so conveyed with moneys belonging to another.

These provisions of the statute vest the title to the property in the alienee. They must be construed as abolishing all trusts of land paid for by one person where the conveyance is given to another, whether for the benefit of the party paying the money or for another, excepting where the conveyance is so taken without the knowledge or assent of the party whose money is so used, and excepting also the trust in favor of creditors.

I concur in the views expressed in the court below, and do not deem it necessary to add anything further thereto.

Judgment affirmed.